**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Paul Arthur LANEY, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 27, 1999.

Filed April 6, 1999.

Timothy L. Clawges, Carlisle, for appellant.

Jaime M. Keating, Assistant District Attorney, Carlisle, for Commonwealth, appellee.

Before CAVANAUGH, EAKIN and OLSZEWSKI, JJ.

EAKIN, J.:

¶ 1 Paul Laney appeals from the judgment of sentence entered after a jury convicted him of aggravated assault, recklessly endangering another person, and illegal possession, use or control of a firearm. We affirm.

¶ 2 The learned trial court aptly summarized the facts:

On July 12, 1997, Kenneth Zeigler was assigned as a fire policeman to protect pedestrians at a demolition site of Andy's Bar on the corner of North Pitt Street and West North Street in the Borough of Carlisle. For years that street corner and the surrounding area has been infamous for street level drug dealing. In the summer of 1997, law enforcement authorities targeted the area and maintained an increased presence in an effort to reduce such illegal activity. Zeigler was wearing a fire police uniform and sitting inside his private automobile which was parked diagonally across North Pitt Street from the demolition site. He was joined by a friend, Charles Messinger, a fire policeman who was not on duty and was in civilian clothes. During the evening, [appellant], Paul Laney, came to the automobile and asked Zeigler and Messinger if they had any cigarettes, which they did not. A short time later, five gunshots were fired. The shots went into the passenger side of the vehicle in which Zeigler and Messinger were sitting in the front seat. One bullet entered the side of Messinger's head, went through his right eye, and lodged under his skin to the left of his nose. Among other injuries caused by that bullet, Messinger permanently lost sight in his right eye. Zeigler was not struck.

\* \* \*

The police responded to the scene. They *discovered that the bullets had* been shot at the fire policemen from behind the brick wall. As the investigation proceeded, a sizable crowd assembled outside the roped off crime scene. [Appellant] was in that crowd. He was listening to a Walkman and singing. [Appellant] yelled to Detective David Fones that "The mother fucker deserved to get shot," "He doesn't belong in our neighborhood," and "Fuck the police."

On July 18, 1997, the Carlisle Police, pursuant to a search warrant, searched the residence of [appellant] on an unrelated matter. [Appellant] was then arrested on that date for various drug violations. He was also arrested on a warrant charging him with disorderly conduct that has [sic] occurred during the police investigation at the scene of the shooting on July 12. [Appellant] failed to make bail on either charge and was incarcerated in the Cumberland County Prison. [Appellant's] cell mate was James Pope. On several occasions, [appellant] told Pope that he had fired the shots into the vehicle of the fire policemen on July 12. On July 31, Pope volunteered to the Carlisle Police what [appellant] had told him. Pope then agreed to participate in a consensual interception of [appellant]. On August 6, the Cumberland County District Attorney approved the interception. On the same day, Pope was outfitted with a hidden tape recorder. While in their cell at the Cumberland County Prison, Pope engaged Laney in a tape recorded conversation during which Laney admitted in considerable detail of how he fired the shots into the automobile of the fire policemen on July 12. On September 4, the Carlisle Police obtained a warrant and arrested [appellant] for the shooting. After waiving his *Miranda* rights, [appellant] admitted to Detective Ronald Egolf that he fired the shots into the vehicle of the fire policemen on July 12.

Trial Court Opinion, 5/8/98, at 2–5 (footnote omitted).

¶ 3   Appellant was convicted January 22, 1998; on March 3, 1998, he was sentenced to prison for an aggregate term of eight to twenty-two years.   In this appeal, appellant claims the trial court erred in refusing to suppress his statements to James Pope, alleging a violation of his right to counsel under the Fifth and Sixth Amendments of the United States Constitution.[1]

¶ 4   Our standard of review is clear:

> In an appeal from the denial of a motion to suppress our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, we may reverse only if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Carlson*, 705 A.2d 468, 469 (Pa.Super.1998) (citations omitted).

¶ 5   We first examine the Sixth Amendment claim.   A defendant who asserts a desire to have counsel may not be questioned concerning a matter on which he has been arrested, unless counsel is present or the right is properly waived. *McNeil v. Wisconsin*, 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). There was no counsel present, and no waiver here; the question is whether the Sixth Amendment applies.

¶ 6   The Sixth Amendment right to counsel is easily invoked for a charged offense, but that invocation cannot extend to future uncharged crimes, unless they stem from the same incident.   *In re Pack*, 420 Pa.Super. 347, 616 A.2d 1006 (1992), *appeal denied*, 535 Pa. 669, 634 A.2d 1117 (1993).   "[T]he Sixth Amendment right to counsel, which is offense specific, [applies] to all the offenses arising from the same incident for which a defendant is charged." *Id.*, at 1010–11.   "To hold otherwise, would allow the Commonwealth to circumvent the Sixth Amendment right to counsel merely by charging a defendant with additional related crimes." *Id.*, at 1011.

¶ 7   In Pennsylvania, this right attaches at the moment of arrest.   *Commonwealth v. Rishel*, 399 Pa.Super. 413, 582 A.2d 662, 665 (1990).   One cannot invoke the Sixth Amendment before arrest, as it does not apply until then.   *Commonwealth v. Karash*, 513 Pa. 6, 518 A.2d 537, 541 (1986).   Appellant suggests his disorderly conduct was so closely tied to the uncharged offense of shooting Messinger that it was really a single incident;   he would have his assertion of a right to counsel after the disorderly conduct arrest preclude all subsequent interrogation about the shooting.   We find the disorderly conduct charge is not sufficiently related to the shooting to allow such an extension.

¶ 8   Appellant shouted obscenities at the crime scene, and was charged as a loudmouthed obstructionist, not for involvement in the shooting.   The two incidents are simply not related in any relevant sense.   There are unique elements in each crime.   They are proven by different facts.   The assault was complete long be-

1.   Appellant also suggests a violation of his right to counsel under Article I, Section 9 of the Pennsylvania Constitution, but offers neither caselaw nor reason to hold that provision offers protection different from the federal constitution.   Where a defendant asserts violations of both constitutions, but claims no heightened protection from the Pennsylvania Constitution, we assume the protections afforded by each constitutional provision are co-extensive. *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1334–35 n. 6 (1995). As appellant offers us no more than the nominal invocation of the state constitution, analysis of the federal constitution is appropriate and sufficient to resolve his claim.

fore the disorderly conduct began. Appellant fled the shooting and returned, posing as a mere bystander; there was no reason to connect his behavior to the assault. The two crimes arguably are parts of one script; appellant's ranting included his opinion the victim deserved to be shot, and he returned to the ambush scene before the investigation was over. However, the convergence ends there. In his reappearance as an agitator, he was as detached from the shooting as a critic is from an author.

¶ 9 This was not the situation in *Pack*. Pack was charged with theft, and the "new" uncharged crime was the burglary which encompassed that same theft. Such indivisible offenses may be within the scope of a single Sixth Amendment assertion, but such an assertion does not, and cannot, preclude questioning about matters which are not legally intertwined in the charges already brought. Unless we graft onto the Sixth Amendment an analysis based simply on time and location, rather than common elements or common sense, this shooting was not part of the same incident as the harangue that followed it.

¶ 10 A separate non-offense-specific right to counsel is encompassed in the Fifth Amendment guarantee "no person ... shall be compelled in any criminal case to be a witness against himself." *See* *McNeil*, at 176, 111 S.Ct. 2204 (citing *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)). This right encompasses counsel's presence when a person is subject to "custodial interrogation," protecting against compelled self-incrimination in such situations. Clearly there was interrogation by Pope; our inquiry is to the existence of custody.

¶ 11 As the suppression court cogently explained:

In *Miranda v. Arizona*, [*supra*], the United States Supreme Court held that the Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during "custodial interrogation" without a prior warning. In *Illinois v. Perkins*, 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990), an undercover law enforcement officer, posing as a fellow inmate, obtained a confession from a defendant. The defendant objected to the use of his confession at trial because no *Miranda* warnings were given prior to his conversation with the undercover officer. The Supreme Court held that the tactic used to elicit the confession from the defendant did not violate the constitutional Fifth Amendment guarantee against self-incrimination, stating:

Custodial interrogation means questioning initiated by law enforcement officers after a person has been taken into custody. The warning mandated by *Miranda* was meant to preserve the privilege during incommunicado interrogation of individuals in a police-dominated atmosphere. That atmosphere is said to generate inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely. Fidelity to the doctrine announced in *Miranda* requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated.

Conversations between suspects and undercover agents do not implicate the concerns underlying *Miranda*. The essential ingredients of the 'police-dominated atmosphere' and compulsion are not present.... There is no empirical basis for the assumption that a suspect speaking to those whom he assumes are not officers will feel compelled to speak by the fear of

reprisal for remaining silent or in the hope of more lenient treatment should he confess.

[*Id.*, at 296–97, 110 S.Ct. 2394 (citations omitted) ]; *See also, Commonwealth v. Boggs*, 695 A.2d 839 (Pa.Super.1997)[,*appeal denied*, 553 Pa. 686, 717 A.2d 1026 (1998) ]. For the reasons set forth in *Perkins*, [appellant's] Fifth Amendment rights were not violated during his tape recorded conversation with James Pope on August 6, 1997.

Suppression Court Opinion, 1/2/98, at 5–6.

¶ 12 We agree with this analysis. Prison walls do not make every conversation inside a custodial one. Appellant talked to James Pope in an atmosphere that was not custodial, particularly as he had no reason to believe Pope would pass along his incriminating words. There being no custody, there is no custodial interrogation, and no violation of appellant's Fifth Amendment rights.

¶ 13 This statement was not the product of police overbearing or disregard for appellant's constitutional rights. As the facts bear out, one problem appellant does not have is reticence, and we cannot find his statement was the product of anything other than his inability to keep his mouth closed.

¶ 14 Judgment of sentence affirmed.

¶ 15 CAVANAUGH, J., dissents.