COMMONWEALTH of Pennsylvania,
Appellee,

v.

Stephen FETTER, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 1, 2000.

Filed Feb. 16, 2001.

Reargument Denied April 19, 2001.

Vincent P. DiFabio, Paoli, for appellant.

Thomas Ost–Prisco, Assistant District Attorney, West Chester, for Commonwealth, appellee.

Before JOYCE, OLSZEWSKI, JJ., and CIRILLO, P.J.E.*

OLSZEWSKI, J.:

¶ 1 Stephen Fetter appeals from the judgment of sentence entered on December 16, 1999, for statutory sexual assault, involuntary deviate sexual intercourse, six counts of corruption of minors, and false reports to law enforcement officials. We affirm.

¶ 2 The above crimes stem from a variety of incidents that occurred between November 1997 and January 1998. In November 1997, appellant had T.W., a minor, perform a striptease at a party given in his

---

* P.J.E. Cirillo did not participate in the consideration or decision of this case.

home. Both minors and adults attended the party. On December 21, 1997, T.W. went to appellant's home, spent the night there, and engaged in sexual intercourse with him. Appellant also performed copulation *per os* on the minor. At the time of this incident, appellant was twenty-one years old, and T.W. was fifteen.

¶ 3 During the investigation of appellant, A.P., a juvenile friend of appellant, agreed that he would wear a wire to speak with appellant at his home. Subsequently, A.P. spoke with appellant and obtained incriminating statements from him. On March 12, 1998, however, A.P. went to appellant's home and tried to speak with appellant again, but appellant would not let him into the house. Instead, appellant telephoned the police and reported that someone was trying to break into his residence. As a result, appellant was charged with making false reports to law enforcement agents.

¶ 4 On May 19, 1998, two state police troopers went to appellant's home to execute a search warrant, in order to obtain tools used in a burglary. Appellant wanted to speak with the state police troopers about some discrepancies he felt were in the warrant. He spoke with the police despite the fact that he was advised that he did not have to speak with them, that he was free to leave, and was not under arrest. During the conversation, appellant freely moved around his residence, provided drinks for the troopers, used the bathroom, and answered the phone. While speaking with the troopers, appellant made incriminating statements concerning his sexual relations with T.W.

¶ 5 Consequently, the police arrested appellant on October 29, 1998. A jury trial was held on October 6, 1999. At the close of trial, the jury found appellant guilty of statutory sexual assault, involuntary deviate sexual intercourse, six counts of corruption of minors, and false reports to law enforcement officials. The jury, however, found him not guilty on the following counts: criminal solicitation for burglary, criminal solicitation of criminal mischief, criminal conspiracy to commit burglary, and criminal mischief and corruption of minors related to those charges. On December 16, 1999, the court sentenced appellant to the following: on the charge of statutory sexual assault, to a term of incarceration of not less than six months nor more than twelve months; on the charge of involuntary deviate sexual intercourse, to a term of incarceration of not less than five years, nor more than ten years, concurrent to the statutory sexual assault; on the multiple charges of corruption of minors, to individual terms of incarceration of not less than three months, nor more than six months, with each sentence to run concurrent to the other sentences; on the charge of false reports, to one year of probation, consecutive to the terms of incarceration. *See* N.T. Trial, 12/16/99, at 694–95. This timely appeal followed.

¶ 6 Appellant raises the following issues for our review:

(1) Did the trial court err in failing to grant [a]ppellant's Motion to Suppress for violations of the Wiretapping and Electronic Surveillance Act?

(2) Did the Pennsylvania State Police obtain statements from [a]ppellant during electronic oral interceptions in violation of his rights under the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution?

(3) Did the trial court err in failing to grant [a]ppellant's Motion to Suppress his statements to the Pennsylvania State Police, who conducted the interview with prior knowledge that appellant was represented by counsel?

(4) Did the trial court err in failing to allow defense counsel to cross-examine

the victim on the issue of her appearance in order to establish the defense of mistake of age pursuant to 18 Pa.C.S.A. § 3102?

(5) Did the trial court err in failing to grant a mistrial based upon the testimony of a witness that [a]ppellant was a "compulsive liar" and "everything out of his mouth is not true?"

(6) Was the [a]ppellant denied his right to effective assistance of counsel?

Brief of Appellant at viii.

¶ 7 When reviewing an order denying a motion to suppress evidence, we must determine whether the factual findings of the suppression court are supported by the evidence of record. *See Commonwealth v. Jackson,* 451 Pa.Super. 129, 678 A.2d 798, 800 (1996). In examining the suppression court's factual findings, this Court may only consider the evidence of the appellee's witnesses, together with so much of the evidence for the appellant, as, fairly read in the context of the record as a whole, remains uncontradicted. *See Commonwealth v. Nester,* 551 Pa. 157, 709 A.2d 879, 881 (1998). "The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts." *Id.* It is exclusively within the province of the suppression court to determine the credibility of the witnesses and the weight to be accorded their testimony. *See Commonwealth v. Fitzpatrick,* 446 Pa.Super. 87, 666 A.2d 323, 325 (1996). If the evidence supports the factual findings of the suppression court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous. *See id.*

¶ 8 Appellant contends that the trial court should have suppressed the evidence obtained from the wire worn by A.P. Appellant believes that normal investigative procedures should have been used instead of the wire, as required under 18 Pa.C.S. §§ 5709(3)(vii) and 5710(A)(3), because this was an in-home interception and the wire would otherwise violate Article I, Section 8 of the Pennsylvania Constitution. In addition, appellant argues that the Commonwealth failed to comply with the requirements of custody and control of the tapes under 18 Pa.C.S. § 5704(2)(ii), because the named custodian never had actual possession, and the police officer made working copies.

¶ 9 Appellant's constitutional argument is based mainly on *Commonwealth v. Brion,* 539 Pa. 256, 652 A.2d 287 (1994) (in a situation involving a one-party consensual, in-home wiretap, the Commonwealth must obtain a prior determination of probable cause by a neutral, judicial authority). In response to *Brion* the Legislature amended the Wiretap Act to include § 5704(2)(iv), which requires the president judge of the court of common pleas, or his designee, to independently review the affidavit and establish that probable cause exists. This is in addition to meeting the other requirements of § 5704(2)(ii), involving review and approval by a designated authority, rules for recording and record keeping, and custodial care by the designated authority. However, 18 Pa.C.S. § 5704 is not subject to other sections of the Wiretap Act, unless specifically enumerated; instead, it lists exceptions to the generally stringent requirements for wiretaps when the interception occurs at the direction of a law enforcement officer and one party voluntarily consents to the interception. Therefore, it was unnecessary for the Commonwealth to establish that "normal investigative procedures with respect to the offense have been tried and failed, or reasonably appear to be unlikely to succeed if tried or are too dangerous to employ." 18 Pa.C.S. §§ 5709(3)(vii) and

5710(A)(3). The Commonwealth did not violate the Pennsylvania Constitution for using a wiretap, even in the appellant's home, as long as they established one-party consent and probable cause to the designated authorities.

¶ 10 Appellant also argues that the evidence should have been suppressed because the designated authority, Deputy District Attorney Cynthia Vickers Wilson, failed to maintain proper custody of the tapes in violation of 18 Pa.C.S. § 5704(2)(ii) and because working copies were made of the tapes. The tapes were delivered to the Chester County Detective's Office, in accordance with normal policy, and stored in the detectives' secured evidence facility. Although the tapes were never in the physical custody of the deputy district attorney, they were placed in the designated, secure location and Ms. Wilson retained total control of access to them. In addition, appellant has failed to cite any evidence of tampering or discrepancy that resulted from the minor mishandling; therefore, it was not fatal error warranting suppression of the evidence. In response to appellant's contention that the police officer should not have made copies, we note that the Wiretap Act generally allows investigators to make working copies of tapes for the proper performance of their duties, *see* 18 Pa.C.S. §§ 5714(b) and 5717; therefore, a prohibition in the case of the exceptions listed in § 5704 is unwarranted.

¶ 11 Appellant argues that his statements should be suppressed because they were obtained in violation of his right to counsel. Appellant believes that the Commonwealth's use of A.P. to intercept communications was in violation of his right to counsel under the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, because the police had knowledge that counsel represented him in this matter. In addition, appellant argues that the voluntary statements he made to the police, while they were in his home, violated his rights under *Miranda* and the Fifth Amendment to the United States Constitution. Appellant's arguments lack merit.

¶ 12 First, we examine the Sixth Amendment and Article I, Section 9 claim. The right to counsel under Article I, Section 9 is coterminous with appellant's Sixth Amendment rights. *See Commonwealth v. Arroyo*, 555 Pa. 125, 723 A.2d 162, 170 (1999). Under both provisions, appellant's right to counsel attaches at all critical stages of a criminal proceeding. *See Commonwealth v. West*, 370 Pa.Super. 365, 536 A.2d 447, 449 (1988). Under the Sixth Amendment, a "defendant who asserts a desire to have counsel may not be questioned concerning a matter on which he has been arrested, unless counsel is present or the right is properly waived." *Commonwealth v. Laney*, 729 A.2d 598, 601 (Pa.Super.1999). "One cannot invoke the Sixth Amendment before arrest, as it does not apply until then." *Id.* Appellant's right to counsel had not attached, because he was not under arrest or charged when the statements were made. Thus, his claim lacks merit.

¶ 13 In addition, "the Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during 'custodial interrogation' without a prior warning." *Id.* at 602.

> Custodial interrogation means questioning initiated by law enforcement officers after a person has been taken into custody. The warning mandated by *Miranda* was meant to preserve the privilege during incommunicado interrogation of individuals in a police-dominated atmosphere. That atmosphere is

said to generate inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.

*Id.* In this case, no custodial interrogation took place. The police advised appellant that he did not have to speak to them, yet he did so freely. During the conversation, appellant was not restricted in any way. He even provided drinks for the troopers, used the bathroom, and talked on the telephone. Appellant was not in custody when the incriminating statements were made; therefore, the right to counsel had not yet attached. Appellant's claimed violations of his right to counsel fail.

¶ 14 Appellant also claims that the trial court erred by not allowing him to cross-examine T.W. about whether she believed she looked older than her actual age. Our law is well settled in the area of lack of ability to cross-examine. It states that "it is within the discretion of the trial court to determine the scope and limits of cross-examination and that [an appellate court] cannot reverse those findings absent a clear abuse of discretion or an error of law." *Commonwealth v. Nolen,* 535 Pa. 77, 634 A.2d 192, 195 (1993); *see also Commonwealth v. Whiting,* 447 Pa.Super. 35, 668 A.2d 151 (1995).

¶ 15 Appellant claims that he attempted to establish a defense under 18 Pa.C.S. § 3102, which states that when criminal conduct depends on a child being below a critical age but older than 14 years, it is a defense to prove the defendant believed the child was above the critical age. Appellant believes that he was unable to es-

tablish this defense because the trial court would not allow him to question T.W. As the victim's beliefs as to how old she looked is irrelevant to appellant's beliefs and knowledge of her actual age, the trial court did not err in sustaining the objection to the question.

¶ 16 Appellant's next claim is based on his belief that the trial court erred in not granting a mistrial when a witness testified that the appellant was a "compulsive liar" and that "everything that comes out of his mouth isn't true." N.T. Trial, 10/7/99, at 305–07. The statement was elicited by the Commonwealth on redirect, but was beyond the proper scope of questioning. Our standard of review for determining whether the trial court erred in not granting a mistrial is as follows. A motion for mistrial is a matter addressed to the discretion of the court. *See Commonwealth v. Jones,* 542 Pa. 464, 668 A.2d 491, 502–03 (1995). A trial court need only grant a mistrial where the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. *See id.*

¶ 17 Here, the trial court issued a curative instruction to the jury.[1] A mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice. *See Commonwealth v. Lawson,* 519 Pa. 175, 546 A.2d 589, 594 (1988). Although the statements made by the witness were inflammatory, the trial court issued curative instructions, which it felt were adequate to cure the defect and overcome prejudice. We agree.

---

1. "Ladies and gentlemen of the jury, I am instructing you that the testimony of the witness, most recent witness, given in response to Mr. Foster's question on redirect, in other words, his last question and the witness' last answer, I'm instructing that that be stricken from the record and I am directing that you will disregard that question and response to it that were given. You may consider anything the witness said prior to that point, but you are to disregard and not include in your consideration at all the question of and the response that were-those last given by that witness." N.T. Trial, 10/7/99, at 307.

¶ 18 Appellant raises twelve sub-issues under his ineffectiveness of counsel claim. The sub-issues are as follows:

(1) Defense counsel failed to raise and litigate the issue that the statements obtained by the State Police from Fetter during oral interceptions were in violation of his rights under the Sixth Amendment of the U.S. Constitution and Article I, Section 9 of the Pennsylvania Constitution.[2]

(2) Defense counsel failed to introduce at trial the custody/visitation order to establish that all visitation exchanges between the defendant and his wife were accomplished with a witness, and he failed to call George Homes, Jr. as a witness to testify that he was present during the visitation exchange on November 6, 1997, in order to establish the time of said exchange.

(3) Defense counsel failed to call Gloria Fetter as a witness to testify as to the events of November 6, 1997 and the time that the defendant arrived at her home with her son after the visitation exchange.

(4) Defense counsel failed to investigate and produce witnesses and other evidence as to the time he was at his doctor's appointment on November 18, 1997, in order to refute the testimony that he was present at his home when certain statements were made about the victim's age and that he went to Philadelphia with these witnesses.

(5) Defense counsel failed to call Marie Waltz as a witness to refute false allegations that the defendant had improper contact with her.

(6) Defense counsel failed to introduce a court order concerning the return of the defendant's bed in order to refute the testimony of Mr. Vacca that he saw the defendant and the victim on his bed hugging and kissing.

(7) Defense counsel failed to call the defendant's mother, Gloria Fetter, as a witness to refute the testimony of Mr. Vacca that the defendant had a bed at his house on the date Mr. Vacca testified he saw the defendant and the victim on his bed hugging and kissing.

(8) Defense counsel failed to call the following witnesses to testify concerning the difficulty he had in waking from sleep: Gloria Fetter, Richard Fetter, Jen Gragilia, Maria Waltz, Marisa Silage, John Petry, and Custodian of Records, Consestoga High School.

(9) Defense counsel failed to question Anthony Vacca concerning his requests for money from Fetter after the investigation had commenced.

(10) Defense counsel failed to question T.W. or present evidence on the following: (i.) The police threatened to file charges against T.W. for entertaining without a license and falsifying her age; (ii.) T.W. and A.P. were in a romantic relationship in 1998; and (iii.) T.W. was not permitted to baby-sit for Fetter.

(11) Defense counsel failed to call Fetter to testify.

(12) Defense counsel allowed the court to instruct the jury on two inconsistent defenses.

Brief of Appellant at 32–34.

¶ 19 The standard of review when evaluating a claim of ineffective assistance of counsel is that the law presumes that counsel is effective; thus, the defendant has the burden of proving otherwise. *See Commonwealth v. Baker*, 531

---

2. This issue has already been addressed and found to lack merit. Therefore, counsel can-not be found ineffective for failing to raise it.

Pa. 541, 614 A.2d 663, 673 (1992). Therefore, in order to prove ineffective assistance of counsel, the defendant must prove: "(1) the underlying claim is of arguable merit; (2) the particular course chosen by counsel did not have some reasonable basis designed to effectuate his interests; and (3) counsel's ineffectiveness [worked to his prejudice]." *Commonwealth v. Blount*, 538 Pa. 156, 647 A.2d 199, 203 (1994). Moreover, we recognize under the law that "trial counsel can never be found ineffective for failing to raise a meritless claim." *Commonwealth v. Smith*, 539 Pa. 128, 650 A.2d 863, 866 (1994).

¶ 20 Ineffectiveness sub-issues two, three, four, five, six, seven, eight, and eleven all refer to appellant's claim that his trial counsel was ineffective for failing to call these potential witnesses. In order to succeed on a claim of ineffectiveness for failing to call witnesses, appellant must demonstrate that his trial counsel knew or should have known about the witnesses. *See Commonwealth v. Phillips*, 411 Pa.Super. 329, 601 A.2d 816, 824 (1992) (appellant must demonstrate the witnesses would have provided material evidence at the time of trial and he must establish the manner in which the witnesses would have been helpful to his case). Further, appellant must demonstrate that the proposed witnesses were available for trial and that the proposed testimony was truly necessary. *See Commonwealth v. Wayne*, 553 Pa. 614, 720 A.2d 456, 470 (1998).

¶ 21 From the record, it is clear that all of these issues are meritless. Specifically, appellant first alleges that two witnesses, George Holmes, Jr. and Gloria Fetter, were present during a custody exchange. However, the record and appellant's brief are devoid of any mention as to when this custody exchange took place or how it would have helped appellant's case. Next, appellant alleges that trial counsel was ineffective for failing to produce witnesses to prove that he had a doctor's appointment on November 18, 1997, when he was allegedly with various witnesses in Philadelphia. Appellant fails to state the time of the alleged appointment and fails to provide the name of the physician. He also fails to assert whether he actually kept the appointment. Therefore, this claim is meritless, and trial counsel cannot be ineffective for failing to raise a meritless claim. *See Smith*, 650 A.2d at 866. As to the testimony of Ms. Maria Waltz, appellant has failed to establish that she was available to testify or that her testimony would have exculpated him. Therefore, this claim is also meritless. *See Wayne*, 720 A.2d at 470. Appellant further alleges that a number of witnesses should have been called to testify that he has difficulty waking from sleep. Appellant has failed to establish that these witnesses were available to his defense counsel or that they were willing to testify for the defense. *See id.* Moreover, appellant has not shown that the absence of these witnesses was so prejudicial that he was denied a fair trial. *See id.* Therefore, this claim is without merit.

¶ 22 Lastly, in regards to the testimony of proposed witnesses, appellant alleges that trial counsel failed to call him as a witness. "In order to sustain a claim that counsel was ineffective for failing to call the appellant to the stand, the appellant must demonstrate either: (1) that counsel interfered with his right to testify, or (2) that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf." *Commonwealth v. Breisch*, 719 A.2d 352, 354 (Pa.Super.1998). The record is devoid of any evidence to support appellant's claim, and appellant fails to assert any

evidence in his brief. Therefore, this claim is meritless.

¶ 23 Issues nine, ten and twelve have not been developed by appellant. Appellant only lists the issues and cites no case law in support of his claims. Therefore, we find these claims waived. In *Commonwealth v. Delligatti*, 371 Pa.Super. 315, 538 A.2d 34 (1988) we stated: "It is not the function of this court to consider, and respond to, vacuous claims. When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof." *Id.* at 41 (citing *Commonwealth v. Sanford*, 299 Pa.Super. 64, 445 A.2d 149, 150 (1982)). Accordingly, we will not address these issues.

¶ 24 Judgment of sentenced affirmed.