COMMONWEALTH of Pennsylvania Appellee,

v.

Stratton PEAY Appellant.

Commonwealth of Pennsylvania Appellee.

v.

Stratton Conover A/K/A Stratton Peay Appellant

Superior Court of Pennsylvania.

Argued May 16, 2002.
Filed Aug. 13, 2002.
Revised Sept. 26, 2002.

**25**

Before KLEIN, BENDER and
MONTEMURO *, JJ.

MONTEMURO, J.:

¶ 1 These unconsolidated appeals lie from judgments of sentence imposed on Appellant following two separate jury convictions of murder in the third degree.

¶ 2 Shortly after midnight on May 7, 1996, Appellant and his friends were standing on a street corner in north Philadelphia when James Hart walked past with his dogs. One of the animals barked or lunged at Appellant, precipitating an argument. As Hart walked away, Appellant shot him twice in the back, killing him. Appellant then fled with his friends in a car. That afternoon, Appellant's car was stopped by two plainclothes police officers for a traffic violation. When the officers, who were unaware of the shooting, approached the car, Appellant reached into his lap, leading to the discovery by police of a .38 Special revolver. Appellant was relieved of the gun, charged with weapons violations, and released.

¶ 3 Eleven days later, during the early morning of May 18, 1996, Appellant opened fire from a vehicle at one Wilbert Shepard, with whom he had had an ongoing feud. Two teenage boys walking home from the store were caught between Appellant and his intended target, and were struck by Appellant's bullets, one, Tyiene Williams, fatally. The other boy, John Bryant, was seriously wounded.

¶ 4 Several hours later, Appellant was again stopped for a traffic violation by a police officer who was unaware of the shooting. Appellant attempted to drive away, but, pursued by police, abandoned the car, pulling off a distinctively striped shirt he was wearing and throwing it to

Salvatore C. Adamo, Philadelphia, for appellant.

Catherine L. Marshall, Assistant District Attorney, Philadelphia, for Com.

* Retired Justice assigned to Superior Court.

the ground as he fled on foot. A handgun was recovered from the car.

¶ 5 The following December, Appellant was arrested under warrant[1] and confessed to both murders. He was tried for killing Hart in January of 1998, and Williams in February of 1999. In both instances, after a jury trial presided over by the same judge, he was found guilty of third degree murder and related offenses, with the addition of an aggravated assault conviction related to the second victim in the Williams matter. The sentence imposed for the first incident was 11 to 22 years' imprisonment; for the second set of offenses, Appellant was sentenced to a life term pursuant to 42 Pa.C.S.A. § 9715(a) (which mandates life imprisonment for anyone previously convicted of third degree murder), with a consecutive 12 to 24 years' confinement for the aggravated assault and other crimes. The ensuing appeals, although not consolidated, do present some common features. We thus address both together.

¶ 6 As his first claim in both appeals, Appellant argues that the trial court erred in refusing to suppress the statement containing his confession to the two murders. The grounds differ from case to case, however: as to the Hart murder, Appellant argues first that his statement was taken in violation of the six hour rule mandated by *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), and clarified in *Commonwealth v. Duncan*, 514 Pa. 395, 525 A.2d 1177 (1987), and *Commonwealth v. Odrick*, 410 Pa.Super. 245, 599 A.2d 974 (1991). He further contends that the voluntariness of his statement is rendered questionable by the absence of his initials on every page. As to the Williams killing,

Appellant argues specifically that the statement was involuntary, as he was forced by physical and mental coercion to sign blank pieces of paper on which the police later entered his confession. In this connection he also asserts that he was never Mirandized.[2] In both cases, Appellant's disclaimers of responsibility for his statement lack merit.

■ ¶ 7 In assessing the propriety of a trial court's suppression order, we are limited to a determination of whether the record supports the court's factual findings. And, unless the legal conclusions drawn from these factual findings are in error, we are bound by them. *Commonwealth v. Cook*, 558 Pa. 50, 735 A.2d 673, 674 (1999).

■ ¶ 8 Insofar as the alleged violation of the *Davenport* rule in the Hart case is concerned, we note that Appellant carefully avoids providing any specific information defining the time frame within which the violation supposedly occurred, or any references to the record supporting his allegations. Accordingly, given the necessity for such documentation, his claim is precluded on appeal. *Commonwealth v. Yarris*, 519 Pa. 571, 549 A.2d 513 (1988), *cert. denied sub nom., Yarris v. Pennsylvania*, 491 U.S. 910, 109 S.Ct. 3201, 105 L.Ed.2d 708 (1989). Even were this not the case, Appellant's claim still merits no relief. Although there is some indication in the record that the arrest occurred at 2:15 a.m., the circumstances of the case as described by unchallenged testimony make clear that this designation was a typographical error. Thus, after hearing testimony and argument at the suppression hearing held immediately prior to trial, the

1. The warrant was issued after the handgun confiscated during the first stop was found to have been the weapon which killed James Hart.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

court found that Appellant was arrested at 2:15 p.m. (N.T., 1/20/98, at 1.39).[3] We see no reason to disagree with the court's finding.

¶ 9 As to Appellant's assertion that his failure to initial every page of his confession undermines any presumed voluntariness, the record reveals otherwise, as Appellant's signature appears legibly on each sheet of his statement. Indeed, at the suppression hearing, defense counsel noted that the statement is indeed signed. (N.T., 1/20/98, at 1.37). The statement, accordingly, lacks no indicium of voluntariness.

¶ 10 The claim of involuntariness/coercion raised in the Williams case is similarly unpersuasive. There Appellant testified at a hearing on reconsideration of the court's denial of his suppression motion in the Hart matter (*see* fn.3, *infra*), that he had been coerced into signing blank statement forms, and that the substance of the statement was later concocted by police. He claimed, too, that no *Miranda* warnings had been administered. The trial court, within whose discretion the assessment of Appellant's credibility rested, *Commonwealth v. Valette*, 531 Pa. 384, 613 A.2d 548 (1992), was unconvinced. Appellant has offered nothing to undermine the legal conclusion drawn by the trial court that his statement was voluntarily given.

¶ 11 Appellant next complains that the evidence was insufficient in both the Hart and Williams cases to convict him of third degree murder. In the Hart murder, Appellant argues, he shot the victim in self-defense, and in the Williams murder, the only inculpatory evidence is his own "uncorroborated confession." (Appellant's Brief at 16).

¶ 12 The well settled test for sufficiency is whether, viewed in the light most favorable to the Commonwealth, the evidence presented at trial and all reasonable inferences to be drawn therefrom proves beyond a reasonable doubt all of the elements of the crime(s) with which the accused is charged. *Valette, supra.* As the trial court points out, the confession in which Appellant states that he believed Hart to be reaching for a weapon is the only evidence to support a self-defense claim, as Appellant did not testify at trial. As is its prerogative, the Hart jury chose to believe the testimony of an eyewitness who related having seen Appellant shoot the victim twice in the back as he was walking away. *Commonwealth v. Hunter*, 768 A.2d 1136 (Pa.Super.2001).

¶ 13 In the Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P.1925(b) filed in the Williams appeal, Appellant advanced several instances of trial counsel's ineffectiveness including failure to move for dismissal on the basis of evidentiary insufficiency. In his appellate brief, that assertion is not repeated under the rubric of incompetent counsel, but has morphed into an independent allegation that the evidence is insufficient to support the verdict. As such, it is waived. *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306 (1998).

¶ 14 Save for one to be addressed later, the remaining claims in each appeal are unrelated, and will be addressed separately.

*The Hart Appeal*

¶ 15 Appellant argues that the trial court erred in refusing to preclude the

---

**3.** Interestingly, this finding is supported by Appellant's own testimony at the hearing on his Motion to Reconsider the denial of his suppression motion in the Hart case held prior to the Williams murder trial. At that proceeding, he positively stated that his arrest had occurred at "[a]bout 2 o'clock in the afternoon." (N.T., 2/8/99, at 7).

testimony of one Dante Hunter, a witness to whom Appellant bragged about shooting James Hart. The basis for Appellant's contention is that he was only provided with the statement containing the substance of Hunter's proposed testimony an hour before trial, a violation of the discovery deadlines *per* Pa.R.Crim.P. 305.

¶ 16 he Commonwealth observes, Hunter was listed as a prospective witness sufficiently prior to trial for Appellant to have interviewed him and to have located any evidence in contradiction of his testimony. Indeed, defense counsel, in introducing his preclusion motion confirms having known Hunter might be called at trial, and, as well as having been provided with Hunter's juvenile record and criminal history, including a copy of the plea bargain Hunter had recently entered while in federal custody, where he had been for at least 9 or 10 months prior to Appellant's trial. Moreover, defense counsel stated that he knew of Hunter from the outset because he had been mentioned in the original affidavit of probable cause in the case. Counsel also conceded that Hunter's statement had only been given to police one hour and 20 minutes prior to his receiving it, and even agreed with the trial court that, given the amount of information Appellant possessed concerning Hunter, the absence of the statement was insignificant. Further, Appellant was permitted to cross examine Hunter concerning any *crimen falsi* charges then pending against him.

¶ 17 Subsection D of Rule 305 provides that where a party discovers evidence prior to or during trial, the opposing party should be notified promptly. This was done. Indeed, the 2 page statement reflecting Hunter's proposed testimony became, in the face of the background information Appellant possessed, more *pro forma* than substantive. Accordingly, the trial court did not err in this regard.

¶ 18 Conversely, in his next claim in the Hart appeal, Appellant argues that the trial court erred in precluding the testimony of witnesses James White and Felicia Wright, who were both apparently prepared to testify that they had heard another individual was responsible for Hart's death. In both these instances, the proposed testimony was found by the trial court to be inadmissible hearsay.

¶ 19 Determination of the admissibility of statements which are arguably hearsay is within the discretion of the trial court, whose decisions we will not disturb on appeal absent an abuse of that discretion. *Commonwealth v. Stallworth*, 566 Pa. 349, 781 A.2d 110 (2001). Here, such a necessity does not arise.

¶ 20 A review of the discussion concerning the testimony of the two precluded witnesses reveals that their evidence was in fact hearsay subject to no recognized exception to the rule excluding such testimony. Moreover, the proposed testimony was, in both instances, double hearsay, since the evidence Appellant wished to present was that his witnesses had heard from third parties that fourth parties had murdered the victim. There is thus no error in the trial court's ruling in this matter.

¶ 21 Appellant, arguing that his sentence was harsh and excessive, next disputes the propriety of the discretionary aspects of his sentence.[4] To be reviewable by this Court, such a claim must raise a substantial question that the sentence imposed

---

4. Appellant has met the requirements of Pa. R.A.P. 2119(f) and *Commonwealth v. Tulad-*

*ziecki*, 513 Pa. 508, 522 A.2d 17 (1987).

was inappropriate under the Sentencing Code as a whole. 42 Pa.C.S.A. § 9781(b). This Court has consistently held that a challenge on the basis of excessiveness does not raise such a question where the sentence falls within statutory limits. *Commonwealth v. Lutes,* 793 A.2d 949 (Pa.Super.2002).

¶ 22 The standard range of the Guidelines recommends for a defendant with Appellant's offense gravity score (13) and prior record score (1), a minimum sentence of 5½ to 10 years' imprisonment. Appellant's sentence for the murder was 10 to 20 years, with a consecutive 1 to 2 years for possessing an instrument of crime charged on a separate bill of indictment. The statutory maximum for third degree murder is 40 years, and for the weapons violation is 5 years. Accordingly, we need not address Appellant's complaint.

¶ 23 Appellant's final claim lists several instances of alleged ineffective representation by trial counsel, specifically, in failing to call him to testify on his own behalf, in failing to call alibi witnesses, and in failing to object to the court's reasonable doubt instruction.

¶ 24 The inquiry to be conducted in assessing claims of counsel's ineffectiveness is by now well-settled: first, a determination is made whether the underlying issue contains arguable legal merit; if so, counsel's action or inaction must be examined to determine whether it was designed to effectuate the client's best interests; if not, the question becomes whether the client suffered actual prejudice as a result of counsel's deficiencies. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987).

¶ 25 The first two of Appellant's claims are unaccompanied by argument. Each argument section consists of one conclusory statement to the effect that counsel was incompetent, accompanied by a statement of "fact": in the first instance

an assertion of innocence, and in the second that Appellant was at home when the murder occurred. No citation to legal authority is provided. We accordingly find that both are waived. *Commonwealth v. Montalvo,* 434 Pa.Super. 14, 641 A.2d 1176 (1984), *appeal denied,* 620 A.2d 490 (Pa. 1994). Even were we to find these matters properly before us, they are meritless. In the first instance, Appellant voluntarily waived his right to testify after a colloquy conducted by the trial court on that subject. Moreover, Appellant has failed to supply any of the requisite information about potential alibi witnesses: that they existed and were available; that counsel knew of them; that they were prepared to appear for the appellant; and that the absence of their proposed testimony was prejudicial. *Commonwealth v. Lopez,* 559 Pa. 131, 739 A.2d 485 (1999), *cert. denied,* 530 U.S. 1206, 120 S.Ct. 2203, 147 L.Ed.2d 237 (2000).

¶ 26 As to the contention that trial counsel should have objected to the court's instruction on reasonable doubt, the jury was charged that reasonable doubt was such as would "cause a reasonable, careful and sensible person to pause, hesitate or refrain from acting on a matter of the highest importance in his or her own interest." (N.T., 1/23/98, at 38). Appellant contends that inclusion of the term "highest importance" "suggests a higher degree of doubt than is required for acquittal." (Appellant's Brief at 28).

¶ 27 In *Commonwealth v. Hawkins,* 567 Pa. 310, 787 A.2d 292, 302 (2001), our Supreme Court quoted with approval the following language, advanced as a first alternative, in a reasonable doubt charge examined in *Commonwealth v. Young,* 456 Pa. 102, 317 A.2d 258, 261–61 (1974): "[the jury] should not condemn unless so convinced by the evidence that they would

venture to act upon that conviction in matters of the highest importance to their own interests." Thus, the term "highest importance" does not, as used in the trial court's instruction, imbue the charge with an intended or impermissible meaning.

*The Williams Case*

¶ 28 In his ineffectiveness claims with regard to the Williams murder, Appellant raises precisely the same contention, that is, trial counsel's failure to object to the reasonable doubt instruction, which mirrored almost verbatim the language employed to the Hart jury. Appellant's argument that the charge is faulty acquires no merit in the hiatus between trials. This issue fails.

¶ 29 Appellant also assigns error, claiming ineffectiveness, to counsel's failure to object to certain alleged hearsay testimony introduced during the Williams trial. Specifically, Appellant refers to the testimony of a detective concerning the statement of a witness, Mark Brown, who had testified only under duress, and in contradiction of most of the contents of his prior statement to police. The detective's evidence was thus permissible to demonstrate Brown's prior inconsistent statements which could come in as substantive evidence under *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986), and *Commonwealth v. Lively*, 530 Pa. 464, 610 A.2d 7 (1992). Counsel cannot be faulted for failing to object to the unobjectionable. *Commonwealth v. Fetter*, 770 A.2d 762 (Pa.Super.2001).

¶ 30 Appellant also asserts that counsel was ineffective for failing to request that a bench warrant be issued for Christina Heller, whom he characterizes as "the defense star witness." (Appellant's Brief at 29). This witness had already been subpoenaed, and the trial court notes that defense counsel had telephoned her over the weekend prior to her anticipated appearance to explain the necessity for her testimony. In fact, counsel had requested issuance of a bench warrant on February 22, 1999, the Monday on which the witness was supposed to appear. Appellant's complaint is that the warrant request had not been made the previous Friday, February 19, 1999. However, the court concluded that the absence of her testimony was not prejudicial, since any evidence she might give would be "contradicted by the overwhelming weight of the evidence, including Defendant's own statement." (Trial Ct. Op. at 7). We see no reason to disagree, and find that trial counsel was not deficient in this regard. *Pierce, supra.*

¶ 31 In conjunction with this claim of ineffectiveness, Appellant insists that the trial court erred in refusing to grant him a continuance to secure the presence of witness Christina Heller at trial. As Pa. R.Crim.P. 106(A) provides in pertinent part, "The court . . . may, in the interests of justice, grant a continuance, on its own motion, or on the motion of either party." Appellate review of the trial court's decisions on continuance motions rests on an abuse of discretion standard. *Commonwealth v. Williams*, 537 Pa. 1, 640 A.2d 1251 (1994).

¶ 32 Here, the court's reason for denying another continuance—the witness was originally supposed to appear on Friday, February 19, 1999, and trial had already been continued until the following Monday—has been noted. Moreover, defense counsel acknowledged the immediate availability of another alibi witness whom she did not call. (N.T., 2/22/99, at 5). Accordingly, we find no abuse of discretion in the court's refusal to further continue the trial.

¶ 33 Next, Appellant protests the trial court's denial of his motion *in limine* seeking to preclude the introduction of two

handguns. The first was recovered when Appellant was stopped by police for a traffic violation some hours after the Hart murder, and the second had been seized on the day of the Williams murder, when Appellant was again stopped by police for a traffic violation, and fled on foot. The trial court ruled the first gun admissible to show Appellant's access to firearms, and the second admissible on condition that the car from which it was recovered could be proven to be Appellant's. As the Commonwealth correctly observes, the jury never received information concerning either gun, rendering Appellant's complaint moot. It is accordingly not reviewable. *Commonwealth v. Dobson*, 302 Pa.Super. 57, 448 A.2d 92 (1982).

¶ 34 Appellant also assigns error to the trial court's decision to allow the Commonwealth to introduce evidence of motive, specifically testimony concerning Appellant's feud with Wilbert Shepard, at whom Appellant was shooting when Tyiene Williams was killed by a stray bullet. He claims that evidence of his having had a fight with Shepard constitutes impermissible evidence of other crimes.

¶ 35 Although Appellant is correct that evidence of other crimes may not generally be introduced, an exception exists for such acts when specifically related to motive. *Commonwealth v. Banks*, 513 Pa. 318, 521 A.2d 1 (1987). This claim is therefore meritless.

¶ 36 Finally, Appellant argues the unconstitutionality of the sentence enhancement provision, 42 Pa.C.S.A. § 9715(a), requiring imposition of a life term for "any person convicted of murder of the third degree in this Commonwealth who has previously been convicted at any time of murder ... in this Commonwealth ...." He argues that the statutory section offends the rule enunciated by the United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because, contrary to the requirements of *Apprendi*, his prior conviction was not charged in a Bill of Information, submitted to a jury, and proven beyond a reasonable doubt.

¶ 37 As the Commonwealth points out, however, and Appellant concedes, the constitutionality of the statutory section was not raised at Appellant's sentencing hearing. Although Appellant argues that *Apprendi* was handed down after he was sentenced, our Supreme Court has opined, under circumstances similar to Appellant's, that "in order for a new rule of law to apply retroactively to a case pending on direct appeal, the issue had to be preserved at 'all stages of adjudication up to and including the direct appeal.'" *Commonwealth v. Tilley*, 566 Pa. 312, 780 A.2d 649, 652 (2001) (quoting *Commonwealth v. Cabeza*, 503 Pa. 228, 469 A.2d 146, 148 (1983)). Thus the issue is waived. Moreover, even had Appellant preserved his claim, *Apprendi* offers no relief, as it specifically exempts from the necessity of inclusion in a Bill of Information "the fact of a prior conviction." *Id.* at 490, 120 S.Ct. 2348

¶ 38 Judgments of sentence affirmed.