J-S42010-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EARL WIMBUSH | |
| Appellant | No. 1312 WDA 2013 |

Appeal from the Judgment of Sentence July 20, 2011
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0000787-2010

BEFORE:  PANELLA, JENKINS and MUSMANNO, JJ.

MEMORANDUM BY PANELLA, J.                **FILED NOVEMBER 13, 2014**

Appellant, Earl Wimbush, appeals from the judgment of sentence entered on July 20, 2011, in the Court of Common Pleas of Allegheny County. After careful review, we affirm.

On the evening of October 31, 2009, Wimbush and his friend, Andre Peters were patronizing a club known as "Dreams." N.T., Trial, 4/26/11, at 204-205. In the early morning hours of November 1, 2009, the men left the club and went to the Cornwall housing development. *See id*., at 205. According to witness accounts, the victim, Timothy Bottoms, was walking down the street when a verbal altercation ensued with Wimbush, also known as "E-Jerk." *Id*., at 207. The testimony adduced at trial varies in its rendition of the events which transpired thereafter. Nevertheless, of importance is the fact that Wimbush admitted he shot and killed Bottoms. Following a non-jury

trial on April 26, 2011, Wimbush was convicted of third-degree murder, firearms not to be carried without a license, and recklessly endangering another person. Wimbush was subsequently sentenced to a period of not less than 12 nor more than 24 years' imprisonment on the third-degree murder conviction and a consecutive term of 3½ to 7 years' imprisonment for the firearms violation. No further penalty was imposed. This appeal followed.

On appeal, Wimbush raises a single issue: whether the evidence was sufficient to support Wimbush's conviction for third degree murder, or whether it showed he acted in self-defense. Wimbush asserts that the evidence shows that he acted in self-defense, making it impossible for him to have committed third degree murder.

"The well-settled test for sufficiency is whether, viewed in the light most favorable to the Commonwealth, the evidence presented at trial and all reasonable inferences to be drawn therefrom proves beyond a reasonable doubt all of the elements of the crime(s) with which the accused is charged." *Commonwealth v. Peay*, 806 A.2d 22, 27 (Pa. Super. 2002) (citation omitted).

Third degree murder is defined in the Crimes Code as murder that is not first or second degree murder. *See* 18 Pa.Cons.Stat.Ann. § 2502(c). "The crime of third degree murder under the Crimes Code incorporates the common law definition of malice." *Commonwealth v. Thomas*, 527 Pa. 511, 514, 594 A.2d 300, 301 (1991) (citation omitted).

[T]o convict a defendant of the offense of third-degree murder, the Commonwealth need only prove that the defendant killed another person with malice aforethought. This Court has long held that malice "comprehends not only a particular ill-will, but . . . [also a] wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured."

… the presence of a deliberate intent to kill while a prerequisite for murder is not required for murder [in the third degree]" in this Commonwealth. Instead, the defendant need only exhibit malice, which as explained above, includes "a class of wanton and reckless conduct [that] manifests …an extreme indifference to the value of human life," but does not necessarily manifest an intent to kill. Indeed, our courts have consistently held that malice is present under circumstances where a defendant did not have an intent to kill, but nevertheless displayed a conscious disregard for "an unjustified and extremely high risk that his actions might cause death or serious bodily harm.'"

*Commonwealth v. Santos*, 583 Pa. 96, 876 A.2d 360, 363-364 (Pa. Super. 2005) (citations omitted). "The Commonwealth need not prove motive in order to establish the existence of malice. The use of a deadly weapon upon a vital part of the victim's body is more than sufficient to provide the element of malice." *Commonwealth v. D'Ambro*, 500 Pa. 303, 308, 456 A.2d 140, 143 (1983) (citations omitted).

There is no doubt that the Commonwealth proved in this case that Wimbush killed the victim with malice aforethought, as Wimbush admitted that he shot Bottoms at a relatively close range, multiple times in the chest and heart, a vital part of the victim's body, which resulted in almost immediate death. Wimbush claims, however, that since he asserted at trial that he was acting in self-defense, the required malice was not present.

While "[a] successful claim of self-defense negates the malice element of third degree murder," *Commonwealth v. Marks*, 704 A.2d 1095, 1099 (Pa. Super. 1997) (citation omitted), there must be some evidence to justify a finding of self-defense. *Commonwealth v. Torres*, 564 Pa. 219, 224, 766 A.2d 342, 345 (2001).

> The use of force against a person is justified when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person. See 18 Pa.C.S. § 505(a). When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt. *See Commonwealth v. Samuel*, 527 Pa. 298, 303, 590 A.2d 1245, 1247 (1991); *Commonwealth v. Upsher*, 497 Pa. 621, 624, 444 A.2d 90, 91 (1982). While there is no burden on a defendant to prove the claim, before the defense is properly at issue at trial, there must be some evidence, from whatever source, to justify a finding of self-defense. *See Commonwealth v. Black*, 474 Pa. 47, 53, 376 A.2d 627, 630 (1977).

*Id*., 564 Pa. at 223-224, 766 A.2d at 345. Where a person has used deadly force against another, the evidence justifying a finding of self-defense has been described as follows:

> [I]t must be shown that a) the actor was free from fault in provoking or continuing the difficulty which resulted in the use of deadly force; b) the actor must have reasonably believed that he was in imminent danger of death or serious bodily injury, and that there was a necessity to use such force in order to save himself or others therefrom; and c) the actor did not violate any duty to retreat or to avoid the danger.

*Commonwealth v. Harris*, 542 Pa. 134, 137, 665 A.2d 1172, 1174 (1995) (citation omitted).

Here, Wimbush testified in his own defense at trial that his actions in shooting Bottoms were in self-defense. Particularly, Wimbush testified that Bottoms was "real angry like" when he yelled "E-Jerk's a rat, what'chu going with that nigga, man. I'm going to merk that nigga." N.T., Trial, 4/26/11, at 207. Wimbush told the court that Bottoms "started charging, reaching, going for his pants, like reaching for a gun" and "when he [got] like a couple feet away from [him]" "he pull[ed] out the gun, and start[ed] firing till [Bottoms] turn[ed] around and r[an] away." *Id*., at 208. According to Wimbush, Bottoms was "screaming" and he believed that Bottoms "was going to kill [him]" because "[he] seen him shoot somebody." *Id*., at 208-209. Wimbush stated that he "couldn't leave like" because "there was nowhere for [him] to go" and that Bottoms would have shot him. *Id*., at 212. Wimbush claims he fired shots within 3 to 4 feet of Bottoms because he "was trying to save [his] life." *Id*.

Once the issue of self-defense was properly before the fact-finder, the burden shifted to the Commonwealth to prove beyond a reasonable doubt that Wimbush was not in fact acting in self-defense. *See Commonwealth v. Bullock*, 948 A.2d 818, 824 (Pa. Super. 2008). The Commonwealth sustains this burden if it establishes at least one of the following: (1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; (2) the accused provoked or continued the use of force; or (3) the accused had a duty to retreat and the retreat was possible with complete safety. *See Commonwealth v. McClendon*, 874 A.2d 1223, 1229 (Pa.

Super. 2005). Although the Commonwealth is required to disprove a claim of self-defense arising from any source beyond a reasonable doubt, the trier of fact is not required to believe the testimony of a defendant who claims he was acting in self-defense. **See Bullock**, 948 A.2d at 824. It remains the province of the trier of fact to determine whether the defendant's belief was reasonable, whether he was free of provocation, and whether he had no duty to retreat. **See McClendon**, 874 A.2d at 1229-1230.

As such, the trial court, sitting as the trier of fact was free to make its own credibility determination concerning the evidence presented. It plainly rejected Wimbush's own self-serving testimony—that was in stark contrast to the evidence presented by the Commonwealth. While Wimbush may, in his own mind, have been in reasonable fear that Bottoms *may* shoot him based upon his threat that he was going to "merk" him coupled with Bottoms past criminality, those apprehensions simply did not come to fruition that day. Rather, the testimony established that Wimbush was the sole attacker, firing multiple shots at close range, killing Bottoms and striking his friend, Andre Peters, whom was attempting to flee from the path of the bullets, in the leg. **See** N.T. Trial, 4/26/11, at 130.

Specifically, the evidence established that Wimbush and Bottoms were engaged in a heated verbal altercation. The two men were "having words" when Wimbush walked up to Bottoms and "just started shooting." **Id**., at 54-56. Witnesses did not actually see a weapon; however, they heard gunshots and saw sparks near Wimbush's hand. **See id**., at 57. Even after

- 6 -

Bottoms attempted to flee, Wimbush continued to fire at him. There was absolutely no evidence that Bottoms possessed a gun at the time of the shooting. This clearly negates any notion that Wimbush acted in self-defense.

As such, we agree with the trial court's assessment that the Commonwealth adequately demonstrated that Wimbush did not reasonably believe that he was in danger of death or serious bodily injury at the time of the shooting.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/2014