J-S32009-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SYLVESTER LEWIS | : | |
| | : | |
| Appellant | : | No. 2645 EDA 2017 |

Appeal from the Judgment of Sentence June 23, 2017
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0003949-2014

BEFORE:  SHOGAN, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY SHOGAN, J.:                **FILED AUGUST 15, 2019**

Appellant, Sylvester Lewis, appeals from the June 23, 2017 judgment of sentence following his conviction by a jury of three counts of rape of a child.[1]  We affirm.

The trial court summarized the facts of the case as follows:

> In December of 2013 [S.H.] walked in on [seven-year-old S.M. ("Victim"),] on top of her [six-year-old] son in a sexual position, while [Victim] was spending the night.  Due to [Victim's] age, [S.H.] told [D.M., S.M.'s mother ("Mother"),] who then questioned her daughter about where she had learned this behavior.  [Victim] told [M]other that [Appellant], her [relative], had been raping her.  [Mother] then took [Victim] to the Crozier Hospital in Chester Pennsylvania, who directed [Mother] to the Children & Youth Services Center (CYS).  CYS Doctor Josephine

---

[1]  18 Pa.C.S. § 3121(c).

Parker (at the time Josephine Morales)[2] examined [Victim]. Ms. Parker recommended [Victim] see a specialist in child sexual assault examinations. Dr. June Messam, a specialist in child sexual abuse examinations, examined [Victim] and found an absence of almost all of [Victim's] hymenal tissue, consistent with repeated penetration of the vagina over an extended period of time.

Officer Robert Graves of the Chester Police Department, Juvenile Division, received this case from the Crozier Hospital where [Victim] was initially admitted. Officer Graves and Josephine Morales conducted a joint interview of [Victim] at the CYS Center. After this interview, Officer Graves received a warrant and conducted a search for [Appellant]. [Appellant] was discovered at his residence and was brought to the Chester Police Station, where Officer Graves and Officer Jones conducted an interview of [Appellant]. [Appellant] was then booked and put into holding.

Trial Court Opinion, 7/13/18, at unnumbered 1–2 (internal citations to the record omitted).

A criminal complaint was filed against Appellant on January 2, 2014. The trial court entertained myriad pretrial motions including, *inter alia*, a motion to suppress with a suppression hearing, motions *in limine*, motions to dismiss pursuant to Pa.R.Crim.P. 600, and motions for new counsel. A jury trial ensued, and on January 13, 2017, the jury convicted Appellant as described *supra*. On June 23, 2017, the trial court sentenced Appellant to an aggregate sentence of sixty to 120 years of incarceration. Post sentence

---

[2] Testimony established that Delaware County Children and Youth Services ("CYS") caseworker Josephine Morales recently married and changed her name to Josephine Parker. N.T., 1/12/17, at 60–61. Both the trial court and Appellant refer to her as Josephine Parker. We also utilize her married surname.

motions were filed and denied, and Appellant filed a timely notice of appeal.

Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

A. Was the verdict against the weight of the evidence presented at trial where the evidence was so inconsistent that a verdict of guilt could not be reached?

B. Did the trial court abuse its discretion by preventing [Appellant's] trial counsel from cross-examining or impeaching Josephine Parker (Morales) with the prior statements given by [Victim] where Ms. Parker testified that the statements given by [Victim] during the investigation were similar, despite there being inconsistencies in the statements?

C. Did the trial court commit an error of law by denying the motion for a mistrial where the observers were making visible gestures during [Victim's] testimony and had conversation with her during a court break, while she was still an active witness on the witness stand?

D. Did the trial court abuse its discretion when it sentenced [Appellant] to an aggregate term of imprisonment of 60 to 120 years incarceration where the sentence is above the guidelines and the trial court did not follow the dictates of 42 Pa.C.S. § 9721(b)?

Appellant's Brief at 5–6 (Issues A and D reordered).

Appellant asserts that his three convictions for rape of a child are against the weight of the evidence. Appellant's Brief at 24. He maintains that Victim's testimony was incredible and that the record is devoid of any corroborating evidence. *Id.* at 10, 25. He argues that statements of the examining physicians contradicted each other, as did testimony of Victim, Mother, and S.H. *Id.* at 26–27.

We have held that a motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence "concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Rayner*, 153 A.3d 1049, 1054 (Pa. Super. 2016) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000)). Our Supreme Court has described the standard applied to a weight-of-the-evidence claim as follows:

> The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court. Thus, "the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider de novo the underlying question of the weight of the evidence." An appellate court may not overturn the trial court's decision unless the trial court "palpably abused its discretion in ruling on the weight claim." Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is "so contrary to the evidence as to shock one's sense of justice."

*Commonwealth v. Cash*, 137 A.3d 1262, 1270 (Pa. 2016) (internal citations omitted). A trial court's determination that a verdict was not against the interest of justice is "[o]ne of the least assailable reasons" for denying a new trial. *Commonwealth v. Colon–Plaza*, 136 A.3d 521, 529 (Pa. Super. 2016) (quoting *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013)). A verdict is against the weight of the evidence where "certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Commonwealth v. Lyons*, 833 A.2d 245, 258 (Pa. Super. 2003) (quoting *Widmer*, 744 A.2d at 751–752). "[W]e do not reach the underlying question of whether the verdict was, in fact, against the weight

of the evidence.... Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion[.]" ***Commonwealth v. Ferguson***, 107 A.3d 206, 213 (Pa. Super. 2015) (citation omitted).[3]

Here, the trial court, who viewed the witnesses' demeanors at trial, determined that the verdict did not shock his sense of justice. We ascertain no abuse of discretion in this determination. In support of our conclusion, we adopt as our own the well-reasoned analysis of the trial court in its Pa.R.A.P. 1925(a) opinion. Trial Court Opinion, 7/13/18, at unnumbered 7–8. We observe that while Victim offered some testimonial variation in details concerning the incident between Victim and the six-year-old boy, as compared

---

[3] A challenge to the weight of the evidence must first be raised at the trial level "(1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." ***Commonwealth v. Akrie***, 159 A.3d 982, 989 (Pa. Super. 2017). The instant record is unclear regarding preservation of this issue. Appellant filed a motion in arrest of judgment and for a new trial on June 28, 2017, but only the cover sheet is included in the record. Docket Entry 97. The trial court denied the motion on July 6, 2017. Docket Entry 101. Appellant filed a post-sentence motion on June 30, 2017, but the record certified to us was missing paragraphs four–eleven. Docket Entry 98. The trial court denied the motion on July 6, 2017. Docket Entry 102. "It is an appellant's duty to ensure that the certified record is complete for purposes of review," and a failure to do so constitutes waiver." ***Commonwealth v. Lopez***, 57 A.3d 74, 82 (Pa. Super. 2012). Through the efforts of the Superior Court Prothonotary to obtain the missing pages from the above documents from the Delaware County Clerk of Courts, we have obtained the entire post-sentence motion, which included a weight-of-the-evidence claim. Supplemental Record, 7/25/19. In addition, the weight issue was raised in Appellant's Pa.R.A.P. 1925(b) statement, and the trial court addressed it in its Rule 1925(a) opinion. We consider the issue preserved and will address it.

to S.H.'s testimony, that incident does not involve Appellant. The slight variations also do not establish Victim's testimony about the rapes as incredible. As we stated in **Commonwealth v. Jenkins**, 578 A.2d 960 (Pa. Super. 1990), "[t]he jury was free to accept all, some or none of the testimony presented. The fact that [it] chose to believe the victim[] does not shock this Court's sense of justice." **Id.** at 963 (internal citations omitted).

Nor do we find that the verdict was based upon surmise or conjecture. Appellant underscores that Victim testified the assaults occurred more than five times but she was unsure whether there were more than ten rapes. Appellant's Brief at 25; N.T., 1/11/17, at 120. We have repeatedly stated, dating back to 1988 at least, that "a child over eleven years of age would ordinarily have a more fully developed ability to remember the time of events than would a child of six or seven." **Commonwealth v. Ables**, 590 A.2d 334, 339 (Pa. Super. 1990) (citing **Commonwealth v. Groff**, 548 A.2d 1237 (Pa. Super. 1988)). While seven-year-old Victim could not state with precision how many times Appellant raped her, she was clear that it happened at Appellant's house in his bedroom "in Chester," which was "near E&G's . . . a hoagie store," and that it happened "every time" Mother dropped her off there. N.T., 1/11/17, at 112, 121–122. After careful review of the record, we agree with the trial court that the verdict is not so contrary to the evidence as to shock one's sense of justice.

Appellant next argues that the trial court improperly prevented Appellant "from impeaching Josephine Parker with the prior statements given by [Victim] because Ms. Parker testified that [Victim] gave two credible statements." Appellant's Brief at 18. Appellant maintains that he wanted to cross-examine the witness "about the prior inconsistent statements made to her by [Victim]" so as to "emphasize the lack of credibility and weight the jurors should place on the witness's testimony . . . ." *Id.* at 18–19. Appellant avers that he "desired to challenge not only the testimony of Ms. Parker, but also the determination made by Ms. Parker that [Victim] made two credible statements." *Id.* at 19.

We note first, that while Appellant asserts "the trial court should have allowed [Appellant] to cross-examine Ms. Parker as to [the] content of those two statements and to challenge her determination that both statements were credible," Appellant's Brief at 20, he does not refer us to the record where the trial court denied cross-examination. Appellant references Ms. Parker's testimony that the CYS investigation resulted in an "indicated" finding of abuse because Victim made two credible statements regarding the rapes by Appellant. Appellant's Brief at 20; N.T., 1/12/17, at 62, 68.

The record does not reveal a denial of cross-examination. Rather, our review indicates that Appellant requested a cautionary instruction to the jury that the jury is the sole arbiter of credibility, and the trial court agreed to so instruct. *Id.* at 69–70. There is no request by Appellant, nor denial by the

- 7 -

trial court, of something more, and Appellant has not directed us to a place in the record of its existence. "It is not this Court's responsibility to comb through the record seeking the factual underpinnings of an appellant's claim." *Commonwealth v. Samuel*, 102 A.3d 1001, 1005 (Pa. Super. 2014). We rely on the trial court's treatment of the issue in rejecting it as meritless. Trial Court Opinion, 7/13/18, at unnumbered 3–4.

Next, Appellant asserts trial court error in denying his motion for a mistrial "where the observers were making visible gestures during [Victim's] testimony and had a conversation with her during a court break . . . ." Appellant's Brief at 20–21. Appellant submits that he twice requested a mistrial. Appellant's Brief at 22. Appellant maintains that the first instance was on the first day of trial during Victim's testimony. *Id.* (citing N.T., 1/11/17, at 114). We have examined the record and there is no request for a mistrial at that point. However, the trial court, *sua sponte*, outside of the presence of the jury, told the spectators:

> Those of you in the audience, I understand that this is very difficult, but I can't have you saying anything while the jury is present. Secondly, I need you to refrain from doing anything by way of body language or anything that is going to interfere with the testimony. I know that is very difficult, but I need you not to respond. For instance ma'am you are nodding your head to me so you are acknowledging what I am saying and I appreciate that. But when a witness is testifying I am going to ask you not to do anything like that.
>
> UNIDENTIFIED: I wasn't nodding, my legs are shaking.
>
> THE COURT: Well whatever, well that is not the way I was taking it and in any event I need you to[.] I know it is not easy

- 8 -

but I need you all to refrain from that otherwise I may need to ask you to remove yourself from the courtroom. Because I need to have a situation where the witness can testify without any suggestion of the witness being prompted in any way. I need you to do that for me. All right now—

UNIDENTIFIED: Your Honor we are here for support for her. That is all we want to do. We don't discuss this with her, we don't discuss this at all. We are here after all these years to try to just be here for her[].

THE COURT: and you have every right to be here and you have every right to be here to support her. Okay but I need to make that statement to you because I want to have a fair trial here. Anything else we need to put on the record?

N.T., 1/11/17, at 114–115. At the ensuing sidebar, the following exchange

between the trial court and defense counsel occurred:

THE COURT: I was watching like a hawk because I was afraid that they were going to be starting suggesting answers or something. There was [sic] no hand signals or anything. The worst that has happened was one woman was nodding her head up and down, and it was the one I mentioned that I asked her not to do that.

[DEFENSE COUNSEL]: And that was my question because obviously my back was facing them.

THE COURT: I was watching them like a hawk. Believe me I was watching because I have been in situations. . . .

[DEFENSE COUNSEL]: Your Honor they are talking to the witness right now. I don't want to I have no choice but to ask.

(Sidebar concluded)

THE COURT: I cannot have you talking to the witness, please—

UNIDENTIFIED: I thought you said when the jury was gone.

THE COURT: I can't have you talking to the witness. The witness is under oath, please don't do that.

N.T., 1/11/17, at 115–116. It was at that point that Appellant made a single request for a mistrial stating, "Your Honor I am loathe to do this, but I mean in light of the fact that they are speaking in front of the jury, they talk to the witness now, I have to ask for mistrial." N.T., 1/11/17, at 116.

Appellant fails to develop his argument. While he sets forth case law in his brief explaining the standards for granting a mistrial, he wholly fails to assert how he was prejudiced. Appellant's Brief at 22–23. Moreover, Appellant claims that the court did not give the jury a cautionary instruction. *Id.* at 23. Our review of the record establishes that Appellant did not request an instruction. N.T., 1/11/17, at 116. Despite this fact, after denying the single mistrial request, the trial court commented, "I'll tell them [the spectators] if there is any communication, I am going to throw them out, all right?" *Id.* at 117. Defense counsel replied, "Yes Your Honor." *Id.* The trial court then reiterated to the spectators that no one was to speak to Victim. *Id.* Defense counsel then asked the court at side bar to tell the jury "that they need to disregard any outbursts." *Id.* at 118. The trial court agreed but noted, "I don't think there was anything." *Id.*

Our standard of review in this context is as follows:

> The trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury, and as such, the grant or denial of a mistrial will not be overturned absent an abuse of discretion. A mistrial may be granted only where the incident upon which the motion is based is of such a nature that its

- 10 -

unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. Likewise, a mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice.

*Commonwealth v. Parker*, 957 A.2d 311, 319 (Pa. Super. 2008) (quoting

*Commonwealth v. Rega*, 933 A.2d 997, 1016 (Pa. 2007)).

The trial court did not abuse its discretion in denying Appellant's mistrial request. Appellant has not expressed how he was prejudiced, he misrepresented the record, and he fails to support his allegation of error. Our review of the record comports with the trial court's decision, and we rely on its explanation, as follows:

> [Appellant's] counsel timely moved for a mistrial after noticing observers making gestures to [Victim]. This [c]ourt chose to deny [Appellant's] motion and instead employed less drastic alternatives. This [c]ourt noted the observers nodding and watched them "like a hawk" and determined they did not give [Victim] any "signals" or "answers."
>
> When observers then spoke to [Victim] while she was on the stand, this [c]ourt immediately stopped the conversation and stated he would remove the observers from the courtroom if additional conversation occurred. Instead of a mistrial, this [c]ourt instructed the observers twice, had sidebar discussions with [Appellant's] counsel, and dismissed the Jury from the courtroom as soon as he witnessed the movements. The [c]ourt did not see the Jury reacting to the observer's movement. For the forgoing reasons, the court did not abuse its discretion by denying a motion for mistrial.

Trial Court Opinion, 7/13/18, at unnumbered 5–6 (internal citations to the record omitted).

Appellant's final issue assails the sentence imposed as excessive and beyond the Sentencing Guidelines. The trial court imposed a sentence of 240

to 480 months of imprisonment for each count of rape of a child, to be served consecutively to each other, which amounted to an aggregate sentence of sixty to 120 years of incarceration. N.T. (Sentencing), 6/23/17, at 16–17.

Appellant's issue relates to the discretionary aspects of his sentence. It is well settled that a challenge to the discretionary aspects of a sentence is a petition for permission to appeal, as the right to pursue such a claim is not absolute. *Commonwealth v. Treadway*, 104 A.3d 597, 599 (Pa. Super. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence," by (1) preserving the issue in the court below, (2) filing a timely notice of appeal, (3) including a Rule 2119(f) statement, and (4) raising a substantial question for our review. *Commonwealth v. Tejada*, 107 A.3d 788, 797 (Pa. Super. 2015) (citation omitted); *Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013).

In the instant case, Appellant filed a timely appeal, the issue was properly preserved in his post-sentence motion, and his brief contains a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence pursuant to Pa.R.A.P. 2119(f). Accordingly, we must determine whether Appellant has raised a substantial question that the sentence is not appropriate under 42 Pa.C.S. § 9781(b). *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010).

The determination of whether there is a substantial question is made on a case-by-case basis, and this Court will allow the appeal only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code, or (2) contrary to the fundamental norms which underlie the sentencing process. *Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa. Super. 2015). "[W]e cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists." *Commonwealth v. Johnson-Daniels*, 167 A.3d 17, 27 (Pa. Super. 2017) (citing *Commonwealth v. Provenzano*, 50 A.3d 148, 154 (Pa. Super. 2012)). "Our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." *Commonwealth v. Knox*, 165 A.3d 925, 929 (Pa. Super. 2017) (quoting *Commonwealth v. Tirado*, 870 A.2d 362, 365 (Pa. Super. 2005)).

In his Pa.R.A.P. 2119(f) statement, Appellant maintains that his sentence is excessive, and the trial court did not consider Appellant's "unique circumstances in any manner or consider his rehabilitative needs relating to those offenses but instead focused solely on the seriousness of the offenses." Appellant's Brief at 13. We conclude that Appellant's challenge to the imposition of his sentence as excessive, together with his claim that the trial court failed to consider his rehabilitative needs, presents a substantial

- 13 -

question. *See Commonwealth v. Johnson*, 125 A.3d 822, 826 (Pa. Super. 2015) (excessive sentence claim, in conjunction with assertion that sentencing court failed to consider mitigating factors, raises a substantial question). Thus, we grant Appellant's application for allowance of appeal and address the merits of this sentencing claim. *Caldwell*, 117 A.3d at 770.

Once again, Appellant misrepresents the record. In his argument, Appellant states the sentence imposed "deviated from the guidelines," and asserts that the trial court "never stated the purpose for the deviation from the guidelines." Appellant's Brief at 16. He does not support this claim with reference to the record. Our review of the record reflects, instead, that the sentence imposed was **within the standard range** of the Sentencing Guidelines. The Guideline Sentence Form ("GSF") reveals that the crime of rape of a child is a first degree felony, the offense gravity score is fourteen, and Appellant's prior record score is five. As noted on the GSF, the mitigated range is a minimum sentence of 180 months, and the standard minimum range is 192–240 months of imprisonment. GSF, 7/3/17.[4] Here, the court imposed a minimum sentence of 240 months, which is in the standard range of the Guidelines.

---

[4] 18 Pa.C.S. § 3121(e)(1) provides that the statutory maximum sentence for a conviction of rape of a child, pursuant to 18 Pa.C.S. § 3121(c), is forty years. The Basic Sentencing Matrix, 204 Pa. Code § 303.16(a), establishes the recommended sentence range for a person with a prior record score of five, where the offense gravity score is fourteen, is 192 months–the statutory limit, which in this case is 240 months.

At sentencing, the trial court indicated that it received the presentence investigation report ("PSI"). N.T. (Sentencing), 6/23/17, at 11. When a PSI report exists, this Court presumes that the trial court "was aware of relevant information regarding the defendant's character and weighed those considerations along with the mitigating statutory factors." *Commonwealth v. Finnecy*, 135 A.3d 1028, 1038 (Pa. Super. 2016). The instant trial court also stated it considered:

> the District Attorney's recommendation, nature and seriousness of the violation, as well as [Appellant's] age, education, familial matter and employment status, as well as any comments offered on [Appellant's] behalf by defense counsel, the remarks of the victim, the remarks of the victim's mother and grandmother, [Appellant's] remarks to the [c]ourt and the Pennsylvania Sentencing Guidelines.

N.T. (Sentencing), 6/23/17, at 17.

With respect to the imposition of consecutive versus concurrent sentences, "long standing precedent of this Court recognizes that 42 Pa.C.S. section 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." *Johnson-Daniels*, 167 A.3d at 28 (quoting *Commonwealth v. Gonzalez–Dejusus*, 994 A.2d 595, 598 (Pa. Super. 2010) (citation omitted)). *See also Commonwealth v. Hoag*, 665 A.2d 1212, 1214 (1995) (explaining that a defendant is not entitled to a "volume discount" for his crimes).

Herein, the record establishes that the trial court considered all of Appellant's circumstances. A PSI report was ordered, prepared, and considered. The court took into account the sentencing guidelines, the protection of the public, the gravity of the offenses, the impact on the victim, and the rehabilitative needs of Appellant. We will not re-weigh those factors and impose our judgment in place of the sentencing court. ***Commonwealth v. Macias***, 968 A.2d 773, 778 (Pa. Super. 2009).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/19

Circulated 07/25/2019 12:01 PM

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY,
PENNSYLVANIA CRIMINAL DIVISION

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | COMMON PLEAS COURT OF DELAWARE COUNTY |
| v. | |
| SYLVESTER LEWIS | CP-23-CR-0003949-2014 |

## OPINION

Pagano, J.                                                                 Filed: July 12, 2018

## BACKGROUND

On January 13, 2017, following a jury trial, Sylvester Lewis (Defendant) was convicted of three counts of rape of a child, a felony in the first degree. [N.T. 1/13/17 p.96]. The charges arose from a series of incidents spanning from 2012 to August of 2013, where Defendant raped his then seven-year-old daughter, S.    M   ., on at least three occasions. [N.T. 1/11/17 p.27].

In December of 2013 Si       H    walked in on S    M    on top of her son in a sexual position, while S       was spending the night. [N.T. 1/11/17 p.97]. Due to Si      's age, Ms. H    told D    M    who then questioned her daughter about where she had learned this behavior. [N.T. 1/11/17 p.56]. S     M    told her mother that the defendant, her father, had been raping her. [N.T. 1/11/17 p.56]. D    . M   then took Si      to the Crozier Hospital in Chester Pennsylvania, who directed D    to the Children & Youth Services Center (CYS). [N.T. 1/11/17 p.59-60]. CYS Doctor Josephine Parker (at the time Josephine Morales) examined S      . [N.T. 1/12/17 p.60]. Ms. Parker recommended S      see a specialist in child sexual assault examinations. [N.T. 1/12/17 p.67]. Dr. June Messam, a specialist in child sexual abuse examinations, examined S      and found an absence of almost all of S       's hymenal tissue,

consistent with repeated penetration of the vagina over an extended period of time. [N.T. 1/12/17 p.112-22].

Officer Robert Graves of the Chester Police Department, Juvenile Division, received this case from the Crozier Hospital where S.     was initially admitted. [N.T. 1/12/17 p.19-20]. Officer Graves and Josephine Morales conducted a joint interview of S.    M     at the CYS Center. [N.T. 1/12/17 p.19-20]. After this interview, Officer Graves received a warrant and conducted a search for the Defendant. [N.T. 1/12/17 p.22]. Mr. Lewis was discovered at his residence and was brought to the Chester Police Station, where Officer Graves and Officer Jones conducted an interview of the defendant. [N.T. 1/12/17 p.22]. Mr. Lewis was then booked and put into holding. [N.T. 1/12/17 p.22].

## DISCUSSION ON THE DEFENDANT'S APPEAL

Defendant has timely filed a Concise Statement of Matters Complained of on Appeal in accordance with Pa. R.A.P. 1925(b)(4). The Defendant raises the following eight issues on appeal: 1) Whether the trial court abused its discretion by failing to allow appellant to cross examine S.    M     2) Whether the trial court abused its discretion by preventing defense counsel from impeaching Josephine Parker (Morales) with prior statements given by S     M     3) Whether the trial court abused its discretion by allowing the jury to listen to the testimony of S     M     during jury deliberations; 4) Whether the trial court committed an error of law by denying defendant's motion for mistrial because observers had made gestures during S     M     's testimony and had a conversation with her during a court break; 5) Whether the trial court committed an error of law by denying defendant's motion for a mistrial because the jury witnessed S     M     's mother cry during the expert testimony of Dr. Messam; 6) Whether the verdict was against the weight of the evidence presented at trial; 7) Whether the evidence

was insufficient to support Defendant's conviction of rape of a child; 8) Whether the trial court abused its discretion when it sentenced defendant to 60 to 120 years incarceration and whether this sentence follows the dictates of 42 Pa. C.S. § 9721(b).

### Issue 1: The Trial Court did not Abuse its Discretion because Defendant's Counsel did Cross-Examine S    M   .

Defendant claims that the trial court abused its discretion by not allowing defendant's counsel to cross-examine S    M   regarding a prior sexual incident with Ms. H. 's son. This claim is meritless.

Defendant's counsel was permitted to cross-examine S   M  and did cross-examine her about the prior sexual contact with Ms. H 's son. [N.T. 1/11/17 p.124]. Therefore, defendant's claim of abuse of discretion is meritless and must fail.

### Issue 2: The Trial Court did not Abuse its Discretion by Not Permitting Defendant's Counsel to Impeach S   M   Through Josephine Parker's Testimony.

Defendant claims that the trial court abused its discretion by not allowing defendant's counsel to impeach Josephine Parker with prior statements given by S M , which defendant claims were inconsistent. This claim is meritless.

Defendant's counsel attempted to impeach S M through the testimony given by Josephine Parker, which is improper pursuant to the Pennsylvania Rules of Evidence. Pa. R. E. 607. If Defendant's counsel desired to impeach S M , Counsel should have done so during the cross-examination of S M . [N.T. 1/12/17 p.87]. The testimony of Josephine Parker pertaining to statements made by S M is hearsay and as such, is inadmissible. Pa. R. E. 802.

The Supreme Court of Pennsylvania explained that one of the general axioms of impeachment is that the contradictory testimony itself must be admissible before it can be used to impeach the credibility of that witness. Commonwealth v. Baez, 431 A.2d 909,

912 (1981). Therefore the court properly sustained the objection against impeachment of Josephine Parker by the Commonwealth.

**Issue 3: The Trial Court did not Abuse its Discretion by Allowing the Jury to Listen to the Testimony of S    M    During Jury Deliberations.**

Appellant's counsel claims that the trial court abused its discretion by allowing the jury to listen to the testimony of S    M    during jury deliberations, where the jury was not allowed to take notes during the trial. This claim is meritless because the Pennsylvania Supreme Court has explicitly ruled that listening to recorded testimony is permissible.

An abuse of discretion "is not merely an error of judgement; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." Bulgarelli v. Bulgarelli, 934 A.2d 107, 111 (Pa. Super. 2007).

Though Pa. R. Crim. P. Rule 656 prohibits the jury from having a transcript of any testimony during trial, the Supreme Court of Pennsylvania has held that audio-recorded testimony is not prohibited under Rule 646. Commonwealth v. Williams, 9 A.3d 613, 623 (Pa. 2010).

During deliberations, the Jury requested to listen to the audio of S    M    's testimony, and this Court permitted them to do so pursuant to Pennsylvania law. [N.T. 1/13/2017 p.85]. Williams, 9 A.3d at 623. Clearly, a direct application of Pennsylvania Supreme Court caselaw is not manifestly unreasonable, prejudicial, or in any sense a misapplication of the law.

**Issue 4: The Trial Court did not Commit an Error of Law by Denying a Motion for a Mistrial when Observers Made Gestures During S⎯ M⎯'s Testimony and Had Conversation with Her During a Court Break.**

The Superior Court of Pennsylvania has stated that "the decision whether to declare a mistrial is within the sound discretion of the trial judge and will not be reversed absent a flagrant abuse of discretion." Comm. v. Pifer, 425 A.2d 757, 763 (Pa. Super. 1981). An abuse of discretion "is not merely an error of judgement; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." Bulgarelli v. Bulgarelli, 934 A.2d 107, 111 (Pa. Super. 2007).

The decision to grant a mistrial is within the discretion of the Trial Court. Com. v. Fetter, 770 A.2d 762, 768 (Pa. Super. 2001). A mistrial is an extreme remedy that is only proper where "the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. Id. at 768.

Here, there was no flagrant abuse of discretion. Where a prejudicial event to the defendant occurs during trial, they may move for a mistrial when the event is disclosed. Pa. R. Crim. P.605. Defendant's counsel timely moved for a mistrial after noticing observers making gestures to S⎯ M⎯ [N.T. 1/11/2017 p. 117]. This Court chose to deny the Defendant's motion and instead employed less drastic alternatives. This Court noted the observers nodding and watched them "like a hawk" and determined they did not give S⎯ any "signals" or "answers." [N.T. 1/11/2017 p.115-16].

When observers then spoke to S⎯ while she was on the stand, this Court immediately stopped the conversation and stated he would remove the observers from the courtroom if additional conversation occurred. [N.T. 1/11/2017 p.117]. Instead of a

mistrial, this Court instructed the observers twice, had sidebar discussions with Defendant's counsel, and dismissed the Jury from the courtroom as soon as he witnessed the movements. The Court did not see the Jury reacting to the observer's movement. [N.T. 1/11/2017 p.118]. For the forgoing reasons, the court did not abuse its discretion by denying a motion for mistrial.

**Issue 5, of the 1925(b) Statement: The Trial Court did not commit an Error of Law by Denying the Motion for a Mistrial after the Jurors Saw S    M    's Mother Cry During Dr. Messam's Testimony.**

The Superior Court of Pennsylvania has stated that "the decision whether to declare a mistrial is within the sound discretion of the trial judge and will not be reversed absent a flagrant abuse of discretion." Comm. v. Pifer, 425 A.2d 757, 763 (Pa. 1981).

Here there was no flagrant abuse of discretion. Where a prejudicial event to the defendant occurs during trial, they may move for a mistrial when the event is disclosed. Pa. R. Crim. P.605. Defendant's counsel made a timely motion for mistrial during recess. [N.T. 1/12/2017 p.124]. When the incident occurred, this Court ordered a recess, and consulted Defendant's counsel before determining not to issue a jury instruction. This court used sound discretion to determine that "every [child rape] trial is going to have some degree of this sort of thing.... [and] it would be impossible to totally avoid it. So as soon as I saw it I stopped the proceeding....and took a jury break .... [in order that the jury] get[s] a chance to cool if in fact they've been inflamed for any reason." [N.T. 1/12/2017 p.124-5].

Moreover, this Court offered to give a "cautionary instruction," Id. line 7, and Defendant's Counsel elected to "not ask for an instruction." [N.T. 1/12/2017 p.12]. Such contemplative conduct does not meet the high burden of abuse of discretion and follows

the standard of review for mistrial; the court properly determined that D⁻ M⁻ ⁻'s conduct did not deprive the Defendant of a fair and impartial trial.

**Issue 6, of the 1925(b) Statement: The Verdict was not Against the Weight of the Evidence Because the Evidence is Consistent with a Verdict that Defendant was Guilty of the Charge of Rape of a Child.**

Defendant argues that a verdict of guilty, in this case, was against the weight of the evidence, where the evidence was so inconsistent that such a verdict could not be reached.

The standard this Court must apply in examining whether a verdict was against the weight of the evidence has been set forth by the Supreme Court of Pennsylvania: "[t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." Commonwealth v. Champney, 832 A.2d 403, 409 (Pa. 2003). It has long been recognized that the uncorroborated testimony of a victim of sexual assault, if believed by the fact finder, is alone sufficient to convict, despite contrary evidence that may be presented by the defense. Commonwealth v. Davis, 650 A.2d 452, 455 (Pa. Super. 1994).

In this case Sl M testified that the defendant, Sylvester Lewis, raped her multiple times from 2012 to 2013. [N.T. 1/11/17 p.111-21]. It is clear that the Jury determined Sl M 's testimony to be credible and chose not to believe the testimony of Raniece Holmes, Defendant's ex-girlfriend. The mere fact that Defendant's counsel presented Raniece Holmes as a witness who contradicted the testimony of Sl M does not mean that the Jury could not find the Defendant guilty based on the testimony of S M . Davis, 650 A.2d at 455. It is well established that so long as the finder of fact reasonably could have determined from the evidence adduced that all of the necessary elements of the crime were established, then that evidence shall

be deemed sufficient to support the verdict. Commonwealth v. Hopkins, 747 A.2d 910, 914 (Pa. Super. 2000).

It is the jury's duty, as the finder of fact, to judge the credibility of witnesses and to weigh the evidence presented at trial in order to reach a verdict. Champney, 832 A.2d at 409. According to the above standards, this Court cannot conclude that the verdict reached by the Jury was so against the weight of the evidence "as to shock one's sense of justice." Id at 408. Therefore, this Court concludes that the verdict was supported by the weight of the evidence and accordingly the Defendant's complaint of error must fail.

**Issue 7, of the 1925(b) Statement: The Evidence Presented at Trial was Sufficient as a Matter of Law to Support that Defendant Engaged in Sexual Intercourse with S        M**

Defendant argues that the evidence was insufficient as a matter of law to convict him of a rape of child because there was insufficient evidence to prove that he engaged in sexual intercourse with S        M        .

The standard this Court must apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. Commonwealth v. Bricker, 41 A.3d 872, 877 (Pa. Super. 2012). This Court is not permitted, however, to weigh the evidence and substitute its own judgment for that of the fact-finder. Id. As the finder of fact, the jury is also the judge of the credibility of each witness's testimony and passes judgment on the weight of the evidence. Id. As such, the jury is free to believe all, part, or none of a witness's testimony and to believe all, part or none of the evidence. Id.

The Pennsylvania Crimes Code states that "a person commits the offense of rape of a child, a felony of the first degree, when the person engages in sexual intercourse with

a complainant who is less than 13 years of age." 18 Pa. C.S.A. §3121(c) (2018). It is uncontested that S[ ] M[ ] was below the age of 13 when defendant allegedly raped her, as she was 10 years old when she testified at trial on January 11, 2017. [N.T. 1/11/17 p.109]. Therefore the only element that the Commonwealth was required to prove to the jury beyond a reasonable doubt was that the Defendant, Sylvester Lewis, engaged in sexual intercourse with his daughter, S[ ] M[ ]. [N.T. 1/13/17 p.76-7]. However, the Commonwealth was not required to provide evidence that precluded every possibility of innocence for the evidence to be sufficient as a matter of law. Hopkins, 747 A.2d at 913. The Commonwealth needed only provide evidence such that the jury could reasonably have concluded that all of the necessary elements of the crime had been committed, namely, that the Defendant engaged in sexual intercourse with S[ ] M[ ]. Id. at 914.

As used in 18 Pa. C.S.A. §3121(c), "sexual intercourse" is, "in addition to its ordinary meaning, … intercourse per os or per anus, with some penetration however slight; emission is not required." 18 Pa. C.S.A. §3101 (2018). S[ ] M[ ] testified that Sylvester Lewis penetrated her both vaginally and anally on more than 5 occasions between 2012 and 2013. [N.T. 1/11/17 p.120]. Moreover, Dr. June Messam, the only expert in this case, testified that S[ ] M[ ] has "very little hymenal tissue" which is abnormal at her age. [N.T. 1/11/17 p.113-16]. Dr. Messam also testified that some type of penetration over a long period of time would be required for S[ ] to have this abnormal hymenal tissue absence at the age of 7. [N.T. 1/11/17 p.118]. Dr. Messam also testified that in her career as a Child Abuse Pediatrician, specializing in child sexual assault examinations, she has performed approximately 2,000 examinations and S[ ]

is only one of three instances where the hymen has been destroyed at such an early age. [N.T. 1/11/17 p.116-22].

As stated earlier, if the jury, as the trier of fact, believes the uncorroborated testimony of a victim of sexual assault, in this case Sl  M , then her testimony alone is sufficient evidence to convict the defendant. Davis, 650 A.2d at 455. In this case Sl  M testified to defendant raping her on multiple occasions. [N.T. 1/11/17 p.20]. It is obvious that the jury believed S .'s testimony and found her to be credible. While this alone would be sufficient evidence to support a conviction against the defendant, the Commonwealth also presented the expert witness Dr. June Messam, who testified that Sl 's lack of hymenal tissue and lack of acute trauma were consistent with a long period of vaginal penetration. [N.T. 1/12/17 p.113-118]. The Jury determined that this was sufficient evidence to conclude that the Defendant, Sylvester Lewis, engaged in sexual intercourse with S  M .

Therefore, given the evidence and testimony presented by the Commonwealth, this court cannot say that the jury was unable to reasonably conclude that the defendant engaged in sexual intercourse with Sl  M , and thus the evidence must be deemed sufficient and defendant's claim of error must fail.

**Issue 8, of the 1925(b) Statement: The Trial Court did not Abuse its Discretion by Imposing an Aggregate Sentence of 60 to 120 Years Incarceration Because this Sentence Follows the Dictates of 42 Pa. C.S.A. § 9721(b).**

The Defendant argues that this Court abused its discretion by imposing a sentence of 60 to 120 years for three separate counts of Rape of a Child because the sentence is above the guidelines and the Court, in imposing this sentence, did not follow the dictates of 42 Pa. C.S.A. § 9721(b). This claim is meritless.

It is well-established that "[s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent an abuse of discretion. Commonwealth v. Hardy, 939 A.2d 974, 980 (Pa. Super. 2007). It is also well-established that "a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable or the result of partiality, prejudice, bias or ill-will." Commonwealth v. Dodge, 957 A.2d 1198, 1200 (Pa. Super. 2008).

The Pennsylvania Crimes Code, 18 § 3121(e)(1) states that a person convicted of the offense of Rape of a Child, as detailed in subsection (c), "shall be sentenced to a term of imprisonment which shall be fixed by the court at not more than 40 years." §18 Pa. C.S.A. §3121(e)(1). Furthermore, 42 Pa. C.S.A. § 9721 (b), entitled "General Standards", puts forward the factors that the court must consider when imposing its sentence. 42 Pa. C.S.A. § 9721(b) states that "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community...." 42 Pa. C.S.A. § 9721(b).

The Defendant, Sylvester Lewis, was convicted of three separate counts of Rape of a Child, where each count carries with it a maximum sentence of 40 years. The Court is soundly within its discretion to impose consecutive or concurrent sentences. 42 Pa. C.S.A. § 9721(b). This Court considered the Commonwealth's request for consecutive sentences for the three convictions, along with gravity of the Defendant's offenses as they pertain to the life of the victim, S.    M    .. [N.T. 6/23/17 p.17]. Taking all of this into consideration, this Court sentenced the Defendant to 60 to 120 years incarceration,

which is squarely within the dictates of both 42 Pa. S.C.A. §9721(b) and 18 §3121(e)(1). There is nothing "manifestly unreasonable" about imposing a sentence explicitly within the range of the sentencing guidelines detailed by the statute of which the Defendant was charged and found guilty. Commonwealth v. Dodge, 77 A.3d 1263, 1278 (Pa.Super. 2013). Therefore, this Court properly imposed a sentence of 60 to 120 years on three counts of Rape of a Child, and accordingly Defendant's complaint of an error on appeal must fail.

## CONCLUSION

For the foregoing reasons, the decision of the Trial Court should be affirmed.

BY THE COURT:

George A. Pagano, Judge

FILED
2018 JUL 13 AM 10: 57
OFFICE OF JUDICIAL SUPPORT